IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER D. SCHNEIDER,

          Plaintiff,

   vs.

AMADOR COUNTY; LINDA
VAN VLECK; JOHN HAHN;
SUSAN GRAIJILIVA; CARA
AUGUSTINE, and DOES 3-40,

          Defendants.

_____/

No. 2:10-cv-3242-GEB-EFB PS

ORDER AND
FINDINGS AND RECOMMENDATIONS

      This case, in which plaintiff is proceeding *pro se*, was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Eastern District of California Local Rule 302(c)(21). Defendants move to dismiss plaintiff's second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and move to strike portions of plaintiff's complaint pursuant to Rule 12(f)(2). Dckt. Nos. 44, 45. Plaintiff opposes the motion. Dckt. No. 47. For the reasons stated herein, the undersigned recommends that the motion to dismiss be granted.

I.    BACKGROUND

      Plaintiff filed a complaint on December 6, 2010 and a first amended complaint on December 27, 2010, which defendants moved to dismiss. Dckt. Nos. 1, 11, 16. The motion to dismiss was granted and plaintiff's first amended complaint was dismissed in its entirety, with leave to amend plaintiff's federal claims only. Dckt. Nos. 32, 36.

1

1    On March 2, 2012, plaintiff filed a second amended complaint alleging thirteen causes of

2    action, including both federal and state law claims, against defendants Amador County (the

3    "County"), Linda Van Vleck (a County code enforcement officer), John Hahn (County counsel),

4    Susan Graijiliva (County land use division head), Cara Augustine (identity not pled), and Does 3

5    through 40 (anonymous complaining witnesses and other involved County officials).  Second

6    Am. Compl. ("SAC"), Dckt. No. 43.  Specifically, plaintiff alleges the following causes of

7    action: (1) a denial of "Equal Protection of Laws," asserted against the County, all four County

8    officials, and Does 2-24; (2) a violation of "First Amendment [protected] Speech," asserted

9    against all defendants; (3) a purported claim entitled "Equitable Estoppel, Laches," asserted

10   against the County, all four County officials, and Does 2-24; (4) a "Lack of due process, under

11   Fifth or in the alternative Sixth and Fourteenth Amendments," asserted against the County, all

12   four County officials, and Does 2-24; (5) "Declaratory Relief-Unconstitutionally Vague and

13   Overbroad Ordinance," asserted against the County, all four County officials, and Does 2-24; (6)

14   a purported claim labeled "Unlawful regulation of Commerce, Ultra Vires actions," asserted

15   against the County, Van Vleck, Hahn, Graijiliva, and Does 2-24; (7) "Failure to Train or

16   Supervise, Negligent Training and Supervision," asserted against the County, Van Vleck,

17   Graijiliva, and Does 2-24; (8) "Gross Negligence, Deliberate Indifference and Failure to

18   investigate," asserted against the County, Van Vleck, Hahn, Graijiliva, and Does 2-24; (9) "Civil

19   Conspiracy and/or collusion under color of law to violate Constitutional rights," asserted against

20   all defendants except Augustine; (10) "Denial of Due Process Hearing," against the County, Van

21   Vleck, Hahn, Graijiliva, and Does 2-24; (11) "Malicious prosecution and/or Abuse of Process,"

22   against the County, Van Vleck, Hahn, Graijiliva, and Does 2-24; (12) a purported claim under

23   California Civil Code §§ 51.7, 52.1(b) a claim plaintiff styled as "Freedom from Violence,"

24   asserted against Van Vleck, Hahn, Graijiliva, and Does 2-40; and (13) a claim labeled as

25   "(Private Actors unlawful actions under Color of Law) Harassment, Conspiracy to prevent

26   ////

2

1  Plaintiff's enjoyment of rights and liberties under State and Federal laws," asserted against Does

2  25-40.  *See generally id.*

3      Despite the length and number of claims asserted in his second amended complaint,

4  plaintiff's allegations appear to be based primarily on defendants' actions regarding two County

5  nuisance ordinances prohibiting over 200 square feet of "junk" from being stored outside on

6  plaintiff's property, which plaintiff contends are unconstitutional.  *See generally id.* (citing

7  Amador County ordinances 19.08.360 and 19.48.130).  According to the second amended

8  complaint, plaintiff has received several letters from the County regarding plaintiff's

9  noncompliance with these ordinances.  Those letters directed plaintiff to remove or place in

10  enclosed storage many of the items on plaintiff's property, including aircraft parts and other

11  assorted items.  *Id.* ¶¶ 43, 51, 59.  Plaintiff received these letters off and on beginning in the fall

12  of 2003 and continuing through the fall of 2010.  *Id.* ¶¶ 20-61.  During this time, plaintiff had

13  several interactions with County officials regarding this issue and he wrote several letters "of

14  protest to Defendants in 2003, 2004, 2006, 2007, 2010, as well as recent letters from October

15  2011 and 2012 . . . ."  *Id.* ¶¶ 20-61, 70 n.20.

16      On March 16, 2004, plaintiff wrote letters to various County officials requesting that

17  records concerning his property be released to him disclosing the identities of anonymous

18  neighbors who had complained that his property was in violation of the ordinances so he could

19  obtain restraining orders and civilly prosecute them.  *Id.* ¶¶ 33-36.  The County denied his

20  request.  *Id.* ¶¶ 34-35.  On March 23 or 24, 2004, plaintiff sent an email contesting this denial to

21  defendant Hahn, County counsel, who in response, "stated/threatened via email (and possibly via

22  phone) that all the laws/code violations in dispute (for which Plaintiff was being accused of

23  violating) could 'be prosecuted criminally as well as civilly' and that the County's position

24  would not change 'unless, of course, a court determines otherwise.'"  *Id.* ¶ 35.

25      Plaintiff continued to have interactions with County actors until April 6, 2006, when

26  plaintiff discovered attached to his property a notice of the County's intention to abate the

nuisance pursuant to the junk ordinances.  *Id.* ¶¶ 36-44.  This notice identified the "[e]xcessive accumulation of junk stored outdoors" on plaintiff's property as a public nuisance and notified plaintiff of his right to a hearing prior to any County action provided plaintiff made a written request, which he did.  *Id.* ¶¶ 44-46, Exs. 7, 8.  However, the abatement hearing was "postponed . . . to a later date if needed" after County officials met with plaintiff on his property on May 3, 2006, and plaintiff subsequently moved certain items to the back of his property.  *Id.* ¶¶ 48-49. Plaintiff asserts that as a result of this meeting and the abatement notice, which required him to remove the "junk" from his property by May 6, 2006, plaintiff relocated airplane wings to the back of his property at "unneeded and great expense."  *Id.* ¶ 51, Ex. 7.  He also sold several "still usable" items at a substantial loss, including a "rare and unique International Harvester Class C Tractor with air brakes (which Plaintiff *never* would have sold . . . )."  *Id.* ¶ 51.

During the spring of 2007, plaintiff received additional letters from the County notifying him that he was again in violation of County ordinances.  *Id.* ¶¶ 53-54.  Plaintiff continued to request a hearing.  *Id.* ¶¶ 52-54.  In June of 2007, plaintiff constructed a display in his front yard "all in retaliation, protest, and objection to County Defendants' letter received a week earlier, and the anonymous Does actions [of lodging complaints against him with the County]."  *Id.* ¶ 55. Plaintiff describes his display as an "outdoor kitchen and living room display with a written sign in large black letters and white background" that was "clearly directed" at County officials.  *Id.* ¶¶ 55, 59.  Plaintiff does not state in the second amended complaint what the sign's message was, but it was spray painted in "foot tall large letters" so as to be "easily read" from the nearby road.  *Id.* ¶ 71.

Plaintiff asserts that a sheriff's officer responded to a complaint regarding his display and "further harass[ed] Plaintiff under Color of law to take down the sign, and remove the display." *Id.* ¶ 56.  Plaintiff removed his sign and later the rest of the display.  *Id.* ¶ 73.  Plaintiff claims that his display was purposefully "clearly illegal" under the County's interpretation of the "junk" ordinances as it was comprised of items stored outside and measured over 200 square feet.  *Id.*

4

1   ¶ 71.  It is plaintiff's wish to construct additional displays, but he has not done so because he

2   believes that a little over a week after the incident with the sheriff, County officials in an

3   "undercover vehicle" took photos of his display and then approached the County District

4   Attorney concerning the potential criminal prosecution of plaintiff for the display, and he thus

5   fears potential arrest.  *Id.* ¶¶ 56-57, 73.

6        Following this incident, plaintiff believed the ordinance issues to have been resolved

7   until October 28, 2010, when plaintiff again received a letter from the County concerning

8   ordinance violations on his property.  *Id.* ¶¶ 59-60.  On November 21, 2010, plaintiff again

9   requested access to County records regarding code enforcement, third party complaints against

10   him, and other materials.  *Id.* ¶¶ 124, 126.  The County denied the request.  *Id.*  Plaintiff then

11   filed the instant action in December 2010.  *Id.* ¶ 60.

12        Defendants Amador County, Van Vleck, Hahn, and Graijiliva[1] now move to dismiss

13   plaintiff's second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

14   12(b)(6), and move to strike portions of plaintiff's complaint pursuant to Rule 12(f)(2).[2]  Dckt.

15   Nos. 44, 45.  Defendants raise several arguments in support of the motion which focus mainly

16   on:  the lack of a final County action for this court to review; the running of the statute of

17   limitations; the lack of the type of County action required to support plaintiff's constitutional

18

19        [1] Although defendant Graijiliva argues that she was improperly substituted into plaintiff's

20   second amended complaint as one of the Doe defendants, Dckt. No. 45 at 29, the argument will
     not be addressed because plaintiff's entire second amended complaint must be dismissed.

21        [2] It does not appear from the docket that defendant Augustine or the Doe defendants have

22   been timely served in this action, as required by Federal Rule of Civil Procedure ("Rule") 4(m)
     and this court's previous orders.  Nor did plaintiff file a proof of such service as required by Rule

23   4(*l*)(1) and Eastern District of California Local Rule 210(b).  As a result, dismissal of those
     defendants for failure to timely serve pursuant to Rule 4(m) and/or for failure to comply with the

24   Rules and court's orders pursuant to Rule 41 and/or Local Rule 110 may be appropriate.
     However, because plaintiff's entire second amended complaint will be dismissed, the service

25   issues will not be addressed at this time.  Nonetheless, plaintiff is admonished that any
     defendants named in a third amended complaint who have not already properly been served must

26   be timely and effectively served in accordance with the Federal Rules of Civil Procedure, and
     proof of such service must be filed with the court.

1    claims; plaintiff's pleading of defensive doctrines as a claim; and plaintiff's re-pleading of state

2    law claims previously dismissed without leave to amend.  *See generally* Dckt. No. 45.

3    II.    <u>MOTION TO DISMISS</u>

4        A.    <u>Rule 12(b)(6) Standards</u>

5        To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a

6    complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it

7    must contain factual allegations sufficient to "raise a right to relief above the speculative level."

8    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something

9    more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable

10   right of action."  *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216,

11   pp. 235-236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as

12   true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 129 S. Ct. 1937,

13   1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when plaintiff

14   pleads factual content that allows the court to draw the reasonable inference that the defendant is

15   liable for the misconduct alleged."  *Id.*  Dismissal is appropriate based either on the lack of

16   cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

17   theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

18        In considering a motion to dismiss, the court must accept as true the allegations of the

19   complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

20   the pleading in the light most favorable to the party opposing the motion, and resolve all doubts

21   in the pleader's favor.  *Jenkins v. McKeithem*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869

22   (1969).  The court will "presume that general allegations embrace those specific facts that are

23   necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256

24   (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

25        Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

26   *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir.

1   1985).  However, the courts liberal interpretation of a pro se litigant's pleading may not supply

2   essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

3   1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

4   Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual

5   allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v.*

6   *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept

7   unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643

8   F.2d 618, 624 (9th Cir. 1981).

9          In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established

10   by exhibits attached to the complaint.  *Durning v. First Boston Corp*., 815 F.2d 1265, 1267 (9th

11   Cir. 1987).  The court may also consider facts which may be judicially noticed, *Mullis v. U.S.*

12   *Bankr. Ct.*, 828 F.2d at 1338, and matters of public record, including pleadings, orders, and other

13   papers filed with the court.  *Mack v. South Bay Beer Distribs*., 798 F.2d 1279, 1282 (9th Cir.

14   1986).

15          B.      <u>Plaintiff's State Law Claims</u> (Causes of Action # 7, 8, 11, 12)

16          Plaintiff's second amended complaint alleges several state law claims, even though those

17   claims were dismissed without leave to amend.[3]  *See* SAC, Claims 7, 8, 11, 12; *see also* Dckt.

18   Nos. 32, 36.  Defendants therefore move to dismiss these claims.  Dckt. No. 45 at 22.  Although

19   including those claims without leave to amend was improper, the court notes that the implicit

20   effort to seek reconsideration on the question of leave to amend is meritless.

21          In his first amended compliant, plaintiff conceded that he did not comply with the

22   California Government Claims Act ("GCA") prior to filing, as required.  Dckt. No. 25.

23   Therefore, the claims were dismissed without leave to amend.  Dckt. Nos. 32, 36.  In his second

24   amended complaint, plaintiff asserts that he has since attempted to comply with the GCA

25

26          [3] Plaintiff acknowledges that his state law claims were dismissed without leave to amend,
but contends that he re-pleads some of them "in order to preserve them."  Dckt. No. 43 at 1-2.

procedure by submitting a claim to the County on April 30, 2011.  SAC ¶ 11.  However, the

GCA requires a party seeking to recover money damages from a public entity or its employees to

submit a claim to the entity *before* filing suit, generally no later than six months after the cause

of action accrues.  Cal. Gov't Code §§ 905, 911.2, 945, 950.2 (emphasis added); *see also Shirk v.*

*Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208 (2007) ("*Before* suing a public entity, the plaintiff

must present a timely written claim . . . ") (emphasis added).  "The legislature's intent to require

the presentation of claims *before* suit is filed could not be clearer."  *City of Stockton v. Super.*

*Ct.*, 42 Cal. 4th 730, 746 (2007).  Therefore, plaintiff's subsequent attempted compliance does

not and cannot cure this defect.  Accordingly, all of plaintiff's state law claims, including any

new state law claims alleged in his second amended complaint, must be dismissed without leave

to amend.

       C.      <u>Plaintiff's Federal Claims</u> (Causes of Action # 1-6, 9, 10, 13)

       While plaintiff has listed many claims in his second amended complaint, the underlying

allegations appear to be rather simple.  As discussed above, plaintiff's allegations are based

primarily on defendants' actions regarding two County ordinances prohibiting over 200 square

feet of "junk" from being stored outside on plaintiff's property.  Plaintiff alleges numerous

federal claims resulting from defendants' alleged actions, including claims for violation of his

First, Fifth, Sixth, and Fourteenth Amendment rights, as well as claims for unlawful regulation

of commerce, civil conspiracy, and private action.  *See generally* SAC, Claims 1-6, 9, 10, 13.

For the reasons discussed below, each of plaintiff's federal claims should be dismissed.

       1.  <u>Equal Protection</u> (First Cause of Action)

       Plaintiff alleges in a claim under 42 U.S.C. § 1983 that the County defendants violated

his rights under the Equal Protection Clause of the Fourteenth Amendment because they

purposefully enforced the junk ordinances against him alone for almost a decade, as opposed to

other similarly situated property owners.  SAC ¶¶ 64-66.  Specifically, plaintiff argues that

defendants "intentionally and knowingly singled Plaintiff out for unequal enforcement . . . to

'make an example' of Plaintiff, and to unequally enforce, interpret, and prosecute ordinances and laws against him," as opposed to other similarly situated agricultural property owners in the County. *Id.* ¶¶ 64-65. Plaintiff claims that similar property owners "have had no such enforcement or in the alternative had have substantially less restrictive and/or the continuous *multi-agency* enforcement for arguably either non-existent or hyper-trivial items over a period of almost a decade." *Id.* ¶ 65. Plaintiff further claims this practice "is not reasonably related to a valid government interest." *Id.* ¶ 66.

The Equal Protection Clause of the Fourteenth Amendment forbids a state from "'deny[ing] to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). The clause is violated when official state action creates classifications that are not "rationally related to a legitimate state interest" (unless classifications warranting a heightened scrutiny level are at issue, in which case stricter scrutiny of the discriminatory enforcement's relation to a valid state interest is required). *Id*. at 440.

Such classifications can arise through discriminatory state enforcement. *SeaRiver Mar. Fin. Holdings Inc. v. Mineta,* 309 F.3d 662, 679 (9th Cir. 2002). When a state discriminately enforces a regulation thereby denying a targeted "class of one" equal protection under the law, an unequal enforcement claim can arise. *Id.* Three elements must be met: (1) selective discriminatory state enforcement, (2) that is "intentional or purposeful" either on its "face" or in "design," (3) for which "there is no rational basis for the difference in treatment." *Id.*; *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

Defendants argue that plaintiff cannot satisfy the first element, selective discriminatory enforcement, because the enforcement element is lacking; i.e., plaintiff "has not been fined, jailed or otherwise punished." Instead, "the SAC's theme is that [the County] has craftily ////

1   avoided prosecuting him" in order to exceed the statute of limitations for any potential claims.[4]

2   Dckt. No. 45 at 13-14.

3          Plaintiff's third cause of action (equitable estoppel and laches) does in fact center on his

4   allegation that the County intentionally delayed enforcement of the ordinances until the statute of

5   limitations could run for any potential claims plaintiff would seek to raise as a result.  Plaintiff

6   alleges that the County "should be estopped  [from] asserting *any* statute of limitations defense

7   when their own actions, fraud and deceit caused the delay, laches should bar any civil or

8   administrative prosecution from County actors for the County's prior abandoned prosecution of

9   2006-2007, that they then re-initiated in 2010 for the same alleged violation that they failed to

10  diligently pursue years earlier for no valid reason."  SAC ¶ 81; *see also* ¶¶ 59-60, 77-80.

11  Plaintiff contends that the "County had an unrestricted opportunity to prosecute the alleged

12  violations of ordinances 19.08.355 and 19.08.360 in 2007 when the dispute was current [and]

13  now when called to task by the current action, they wish to get a second bite at the apple . . . ."

14  *Id.*

15         It is inconsistent for plaintiff to allege that the County selectively enforced the junk

16  ordinances against him (first cause of action) while concurrently pleading that the County

17  intentionally refrained from enforcing the ordinances against him (third cause of action).

18  Furthermore, as discussed below regarding plaintiff's due process claims (fourth and tenth

19  causes of action), even assuming all of plaintiff's allegations are true, no action has been taken

20  

21         [4] Defendants further argue that plaintiff cannot satisfy the third element, lack of rational
    basis, because the neighbors' complaints against plaintiff provided a rational basis for the
22  County's investigation of him and his property.  Dckt. No. 45 at 14.  Because the court cannot
    reasonably infer from the complaint that enforcement occurred, plaintiff has not satisfied the first
23  element and consideration of the remaining elements is not reached.
           Defendants also argue that all of plaintiff's federal claims are barred by the applicable
24  statutes of limitation.  Dckt. No. 45 at 18-21.  As defendants note, however, based on the
    confusing presentation of plaintiff's claims, it is difficult to apply the statutes of limitations.  *Id.*
25  For that reason, and because the allegations fail to present any possible claim for the court to
    review, aside from plaintiff's First Amendment retaliation claim, the court does not address the
26  statutes of limitation at this time.

                                                    10

by or on behalf of the County for this court to review and, while it is possible some event could occur in the future between plaintiff and the County that could warrant review in federal court, this claim is not yet ripe.  No such event has occurred at this time.  *United States v. Streich*, 560 F.3d 926, 931 (9th Cir. 2009).

Although pleading alternative legal theories is permissible where done so appropriately, plaintiff asserts factual contentions that simply contradict each other.  It is unreasonable to ask the court to accept plaintiff's simultaneous allegations that enforcement did *and* did not occur depending on which pleading requirements he wishes to meet.  *See W. Mining Council*, 643 F.2d at 624 (the court need not accept unreasonable inferences, or unwarranted deductions of fact).  In borrowing plaintiff's language, it is not reasonable for him to have his apple and eat it too. Enforcement is therefore not reasonably shown to have occurred and is in fact negated by plaintiff's claim that it was intentionally avoided.  *See* SAC ¶¶ 59-60, 77-81.  Because enforcement is a required element of this claim, and because the deficiency cannot be cured as plaintiff has claimed that enforcement was intentionally avoided, plaintiff's equal protection clause claim should be dismissed without leave to amend.  *See id.* ¶ 78 (alleging that the County "has had at least 6 opportunities to pursue this action over the last 7 years, they have *each time* failed to diligently prosecute Plaintiff . . .") (emphasis added); *see Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (while the court would normally grant a pro se plaintiff a chance to amend his complaint, the court will not grant leave to amend where it is clear that no amendment can cure the complaint's defects).

2. <u>First Amendment</u> (Second Cause of Action)

Plaintiff also alleges that the County and County officials violated his First Amendment right to freedom of speech regarding his protest display, including a black spray-painted sign, and his letters to the County protesting the ordinances.  SAC ¶¶ 70-75.  Although it is not entirely clear, it appears plaintiff is purporting to advance two arguments: (1) the junk ordinances unconstitutionally chill his protected speech because they prohibit the type of outdoor

1   protest display plaintiff constructed; and (2) County actors unconstitutionally retaliated against

2   him for his outdoor display and written speech. *Id.*

3        Plaintiff contends that the County's "actions and enforcements from on or around 2004 to

4   2011 were in part or whole motivated by [defendants'] improper desire to punish, harass,

5   intimidate, and *silence* plaintiff for his free speech in the form of his prior display, and for his

6   past and *current* written speech as illustrated by his numerous letters to County actors, which

7   were all in protest to Defendants' unlawful actions, interpretations, and enforcement of

8   ordinances against Plaintiff, his property, possessions, and animals." *Id.* ¶ 70.  Plaintiff contends

9   that his "'outdoor' First Amendment display in the front of his house on or around June 6, 2007

10  is another example of such speech and expression." *Id.* ¶ 71.  The outdoor display "was

11  specifically made of things he stored 'outside' and amounted to 'over 200 square feet'" and was

12  therefore impermissible under the ordinances. *Id.* ¶ 71.  Attached to and "very prominently

13  displayed" on the outdoor display "was a highly visible black spray-painted sign, written in foot

14  tall large letters, so that everyone (the public) driving on or around Stone Jug Rd could easily

15  read it."[5]  *Id.*  Plaintiff contends that the day after the display was made, "'someone' called the

16  Sheriff who came out to ask Plaintiff to remove the sign and display . . . ." *Id.*

17                    a.  Do the ordinances chill plaintiff's speech by prohibiting his display?

18        Defendants argue that plaintiff's claim that the junk ordinances unconstitutionally chill

19  his protected speech fails because (1) junk is not speech under the First Amendment, and

20  plaintiff has not alleged that his outdoor display was intended to communicate a particular

21  message; (2) even if the 2007 display qualified as speech, plaintiff does not allege that he was

22  retaliated against because of it and injured as a result; (3) even if the display was intended to

23  communicate a particular idea and was very highly likely to be so perceived, the County was still

24  entitled to indirectly restrict that symbolic speech since the purpose of the junk ordinances is

25

26        [5] Neither party states what the sign actually said or how the content of the sign relates to
    or is informed by the protest letters that plaintiff had previously written.

completely unrelated to personal expression of ideas and apply equally to all materials falling within their definitions, rather than just to "expressive" items; and (4) the subject ordinances do not prohibit expressive use of surplus materials and instead just regulate the *quantity* that can be stored outside.  Dckt. No. 45 at 16-17.  Defendants contend that because plaintiff does not allege that he was unable to communicate his idea by using less that 200 square feet of material, no First Amendment violation could have occurred by regulating plaintiff's outdoor display.  *Id.* at 17.

        "[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies."  *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).  To come under the First Amendment's protection as expression, a particularized message must be conveyed.  *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1058 (9th Cir. 2010).  "[C]onduct intending to express an idea is constitutionally protected only if it is 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments,' which means that '[a]n intent to convey a particularized message [is] present, and . . . the likelihood [is] great that the message w[ill] be understood by those who view [ ] it.'"  *Id.* (quoting *Spence v. Washington*, 418 U.S. 405, 409-11 (1974)).  The Supreme Court in a footnote in *Clark* rejected the notion that a party engaged in allegedly symbolic speech must do no more than assert "a plausible contention' that their conduct is expressive."  468 U.S. at 293 n.5.  The Court reasoned that to do so would create a rule that all conduct is presumptively expressive which would "deviate from the general rule that one seeking relief bears the burden of demonstrating that he is entitled to it."  *Id.*

        Here, it is unclear from plaintiff's second amended complaint why exactly plaintiff contends the junk ordinances unconstitutionally chill his protected speech – because they prohibit his outdoor display, the sign attached thereto, or both.  Therefore, it is very difficult for the court to determine whether the "speech" at issue is or is not expressive.  To the extent plaintiff contends that the ordinances violate plaintiff's First Amendment rights because they

preclude plaintiff from placing the *sign* in his yard, the claim would fail because the sign alone

would not appear to be prohibited by the ordinances.  Nor has plaintiff sufficiently alleged that

the entire display – which plaintiff alleges was specifically made of things he stored outside and

amounted to over 200 square feet, in violation of the ordinances – was intended to be expressive,

or whether the expressive portion of the display was the sign itself.  Moreover, the facts plaintiff

pleads do not allow the court to reasonably infer that there was a great likelihood that any

message plaintiff intended to convey via the sign, the display, or both would be understood by

those who viewed it.  In fact, the reverse is true.  Although plaintiff alleges that the display

included a white sign with foot tall black letters that was easily readable and "clearly directed" at

County officials, both plaintiff's neighbor and a UPS driver apparently did not understand the

display or the sign.[6]  SAC ¶¶ 55, 59, 71-72 ("[A] neighbor . . . specifically stopped to ask

plaintiff 'Who the F . . . pissed you off?' [and] a UPS delivery driver intentionally stopped to

comment about Plaintiff's display and sign in a similar fashion.").

Therefore, because the allegations in plaintiff's second amended complaint which purport

to demonstrate that the junk ordinances unconstitutionally chill plaintiff's protected speech are

insufficient to "raise a right to relief above the speculative level" or to "allow[] the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged," his claim that

the ordinances violate his First Amendment rights must be dismissed.  *Twombly*, 550 U.S. at

555; *Iqbal*, 129 S. Ct. at 1949.  Plaintiff should be given leave to amend this claim to the extent

he can cure the deficiencies outlined herein.

                              b. <u>Did defendants retaliate against plaintiff for his display or letters?</u>

With regard to plaintiff's claim that defendants retaliated against him for his display and

written speech, defendants argue that (1) plaintiff has not yet sustained any punishment by the

---

[6] The second amended complaint fails even to state what text or content appeared on the sign.  If it said anything, the words or content cannot be discerned from the second amended complaint.

1    County and therefore plaintiff has not shown any deterring effect of the alleged retaliation, and

2    (2) the alleged facts do not show retaliatory intent by defendants.  Dckt. No. 45 at 17-18.

3            "The First Amendment forbids government officials from retaliating against individuals

4    for speaking out."  *Blair v. Bethel School Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  To establish

5    a claim of government retaliation against a plaintiff's exercise of his free speech rights, a

6    plaintiff must show that "(1) he engaged in constitutionally protected activity; (2) as a result, he

7    was subjected to adverse action by the defendant that would chill a person of ordinary firmness

8    from continuing to engage in the protected activity; and (3) there was a substantial causal

9    relationship between the constitutionally protected activity and the adverse action."  *Id*.  Plaintiff

10   alleges his display and written speech caused defendants to subject him to several adverse

11   actions.  *See generally* SAC, Claim 2.

12           Defendants argue plaintiff fails to establish this claim's third element, the required causal

13   relationship.  Dckt. No. 45 at 17.  To satisfy a retaliation claim's causation requirement, a

14   plaintiff must plead facts that allow the court to reasonably infer "that the protected conduct was

15   a 'substantial' or 'motivating' factor in the defendant's decision [to take adverse action]."

16   *Soranno's Gasco, Inc., v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (quoting *Mt. Healthy

17   City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)); *Iqbal*, 129 S. Ct. at 1949

18   (quoting *Twombly*, 550 U.S. at 570).  "If the plaintiff makes this initial showing, the 'burden

19   shifts to the defendant to establish that it would have reached the same decision even in the

20   absence of the protected conduct'" by a preponderance of the evidence.  *CarePartners, LLC v.

21   Lashway*, 545 F.3d 867, 877 (9th Cir. 2008) (quoting *Soranno's*, 874 F.2d at 1314)).  A plaintiff

22   can show his speech was "a substantial or motivating factor behind the government conduct" by

23   pleading such assertions as that his speech was "suspiciously" close in time to the subsequent

24   government action, that officials made comments indicating retaliatory intent, and that there

25   were indications of officials' refusal to communicate with the plaintiff.  *See id.* at 878.

26   ////

1    Here, plaintiff asserts several factual bases for a retaliation claim, including specifically the

2    letters and an email he wrote to the County, as well as his outdoor display.

3                          *I. The Letters and Display*

4            Plaintiff's argument regarding his letters and his display is circular.  Plaintiff asserts that

5    the County's enforcement of the ordinances against him motivated him to write his letters and to

6    create the display.  SAC ¶¶ 70-71.  Yet, he also claims that the ordinances were enforced because

7    the County intended to punish him for his letters and the display.  *Id.*  Furthermore, though the

8    court will "'presume that general allegations embrace those specific facts that are necessary to

9    support the claim,'" plaintiff simply states that his display and letters caused County defendants

10   to "punish, harass, intimidate, and *silence*" him.  *Nat'l Org.*, 510 U.S. at 256 (quoting *Lujan*, 504

11   U.S. at 561); SAC ¶¶ 70-73.  While those are elements of the intended claim, since *Twombly* and

12   *Iqbal* that is no longer enough.  To survive dismissal pursuant to Rule 12(b)(6), a complaint must

13   contain more than a "formulaic recitation of the elements of a cause of action"; it must contain

14   allegations sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S.

15   at 555.  Though plaintiff claims that his letters and display caused defendants to act with

16   improper motivation, he does not plead "factual content that allows the court to draw the

17   reasonable inference that the defendant[s] [are] . . . liable for the . . . alleged" retaliation.  *Iqbal*,

18   129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  Specifically, the facts alleged, if taken

19   as true, do not demonstrate that his letters or display--and not the obligation to enforce the

20   nuisance ordinances--motivated the acts by defendants that plaintiff complains of here.

21           For instance, plaintiff does not allege that subsequent County action was "suspiciously"

22   close in time to his letters or his display.  *CarePartners*, 545 F.3d at 877 (quoting *Soranno's*, 874

23   F.2d at 1314); *see generally* SAC.  As defendants argue, the timing of events pled by plaintiff

24   demonstrates that his letters and display followed the County's actions, not vice versa.  Plaintiff

25   explicitly states that his letters and display were "all in protest" of the ordinance enforcement.

26   SAC ¶¶ 70-71; Dckt. No. 45 at 18.  Nor does plaintiff plead indications of refusal by County

1   officials to communicate with him.  *CarePartners*, 545 F.3d at 877 (quoting *Soranno's*, 874 F.2d

2   at 1314).  Instead, plaintiff repeatedly claims that County officials continued to contact him by

3   letter, telephone, email, and in person for almost a decade.  *See generally* SAC.

4          The second amended complaint also does not allow the court to reasonably infer that

5   plaintiff's letters were a "'substantial' or 'motivating' factor in the . . . [County's] decision" to

6   instigate the abatement proceedings in 2006.  *Id*. ¶ 44; *Soranno's*, 874 F.2d at 1314 (quoting *Mt.*

7   *Healthy,* 429 U.S. at 287); *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

8   Plaintiff wrote three letters to various County officials, one in 2003 and two in 2004, before the

9   County notified him in 2006 that the junk ordinances would be enforced by abatement.  SAC

10  ¶¶ 21, 31-34.  According to the complaint, this enforcement was prompted by plaintiff's outside

11  storage of various items including airplane wings.  *Id*. ¶¶ 42-44.  Indeed, plaintiff's own

12  allegations show that the abatement was indefinitely postponed after plaintiff moved these items.

13  *Id.* ¶¶ 48-52.  In his fourth, fifth, and sixth claims, plaintiff claims that he was and continues to

14  be subject to the potential enforcement of these ordinances due to the fact that he stores several

15  items outside that may be "junk" and thus trigger enforcement.  *Id.*, Claims 4-6, ¶ 88.  Moreover,

16  plaintiff alleges that the County was motivated to investigate his property by complaints from

17  neighbors, and as a result of those complaints, plaintiff names those neighbors as Doe defendants

18  in this action.  *See generally id.*

19                              *ii.  Plaintiff's 2004 Email*

20         However, plaintiff's factual assertions regarding his 2004 email could serve as the basis

21  of a retaliation claim.  Plaintiff asserts that on March 16, 2004, he sent a letter to the County

22  requesting certain records be released to him, but the County denied plaintiff's request.  *Id*.

23  ¶¶ 33-35.  On March 23 or 24, 2004, plaintiff then sent an email to defendant Hahn "contesting

24  the absolute and total denial [to him] of each and every record in the possession of any of the

25  listed agencies. . ."  *Id*. ¶ 35.  In response to plaintiff's email, plaintiff asserts that Hahn

26  "stated/threatened via email (and possibly via phone) that all the laws/code violations in dispute

1   (for which Plaintiff was being accused of violating) could 'be prosecuted criminally as well as

2   civilly'. . . ." *Id.*

3        On these assertions, plaintiff arguably meets the first element of a retaliation claim

4   against Hahn: i.e., he engaged in constitutionally protected activity. *Blair*, 608 F.3d at 543.  His

5   email contested the County's "absolute and total denial" of his request for County records

6   disclosing the identities of the anonymous neighbors who had complained about his property.

7   SAC ¶¶ 33-36.  Plaintiff pleads that he has "a fundamental First Amendment right to send letters

8   of disagreement and concern to his Government" in protest of the County's "actions such as the

9   improper prosecution or harassment initiated or continued to silence, deter, or punish" him for

10  his written speech. *Id.* ¶ 70.  Plaintiff's email constitutes protected speech under the First

11  Amendment as the "right to petition the government for redress of grievances is a protected First

12  Amendment right" and there is "a protected interest in commenting on the actions of government

13  officials." *Adams v. Kraft*, 2011 WL 846065, at *5 (N.D. Cal. Mar. 8, 2011) (citing

14  *CarePartners*, 545 F.3d at 876-77) (citing *Soranno's*, 874 F.2d at 1314).

15       The second element of a retaliation claim against Hahn is also met here: viewed in the

16  light most favorable to plaintiff, as a result of his 2004 email, plaintiff was subjected to adverse

17  action when Hahn threatened him with potential criminal prosecution.[7]  *Blair*, 608 F.3d at 543;

18  *Jenkins*, 395 U.S. at 421; SAC ¶ 35.  "Informal measures, such as 'the threat of invoking legal

19  sanctions and other means of coercion, persuasion, and intimidation,' can violate the First

20  _____

21       [7] Defendants cite *Kuck v. Danaher*, 600 F.3d 159, 167-68 (2d Cir. 2010), in which the
    Second Circuit found "no adverse action [was] pled" by allegations that an officer told plaintiff
22  that gun laws would be strictly enforced in the future, especially since plaintiff continued his
    criticism of public officials thereafter.  Defs.' Reply, Dckt. No. 48 at 4.  However, *Kuck* is
23  distinguishable from this case.  In *Kuck*, the Second Circuit found that the plaintiff did not allege
    an adverse action because he "has not pleaded facts that suggest he was actually threatened by
24  any of the defendants. At most, the allegations suggest that the DPS officer intended to strictly
    enforce laws limiting the sale of firearms at upcoming gun shows." *Kuck*, 600 F.3d at 168.
25  Conversely, here plaintiff pleads facts that suggest he was threatened by Hahn in an email (and
    possibly in a phone call) that was personally directed to plaintiff in response to his written
26  speech and specifically based upon plaintiff's personal violations of the junk ordinances.

Amendment [ ].  This court has held that government officials violate this provision when their acts 'would chill or silence a person of ordinary firmness from future First Amendment activities.'"  *White*, 227 F.3d at 1228 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)) (quoting *Mendocino*, 192 F.3d at 1300) (ruling that a U.S. Department of Housing and Urban Development's investigation chilled the plaintiffs' First Amendment rights even though their materials were not banned or seized, and *neither* criminal nor civil sanctions were ultimately pursued); *see also Laird v. Tatum*, 408 U.S. 1, 12-13 (1972) ("[G]overnmental action may be subject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights."); *Am. Communications Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 402 (1950) ("[T]he fact that no direct restraint or punishment is imposed upon speech or assembly does not determine the free speech question.  Under some circumstances, *indirect 'discouragements'* undoubtedly have the same coercive effect upon the exercise of First Amendment rights as imprisonment, fines, injunctions, or taxes.") (emphasis added); *White*, 227 F.3d at 1228 n. 8.

In accepting plaintiff's allegations as true and resolving all doubts in his favor, it is reasonable for the court to infer that Hahn's email (and possibly phone call) "would chill a person of ordinary firmness from continuing" to protest the denial of the records or to further petition their disclosure due to fear of potential criminal prosecution for the junk ordinance violations.[8]  *Hospital Bldg.*, 425 U.S. at 740; *Jenkins*, 395 U.S. at 421; *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570); *Blair*, 608 F.3d at 543; SAC ¶ 35.

////

_____

[8] To the extent defendants argue this claim fails because the second amended complaint does not show actual deterrence, this argument is irrelevant.  *Id.*; Dckt. No. 45 at 17; Dckt. No. 48 at 4.  A plaintiff must only show that a defendant purposefully interfered with his First Amendment rights, not that his speech was actually chilled.  *Mendocino*, 192 F.3d at 1300; *see Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012).  To require otherwise would unjustly "allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity."  *Mendocino*, 192 F.3d at 1300.

1     With regard to the third element of a retaliation claim, the second amended complaint

2  also alleges facts, which if true, show a "substantial causal relationship between the

3  constitutionally protected activity and the adverse action" regarding these two emails.  *Blair*, 608

4  F.3d at 543.  The specific date of Hahn's email is not pled, but it appears to have been sent

5  "suspiciously" close in time to plaintiff's March 23rd or 24th email protesting the County's

6  denial of his records request, and Hahn's alleged comments concerning "invoking legal

7  sanctions" against plaintiff indicate retaliatory intent.  *CarePartners*, 545 F.3d at 878; *White*, 227

8  F.3d at 1228 (quoting *Bantam*, 372 U.S. at 67 (internal quotation marks omitted)); SAC ¶¶ 33-

9  35.

10     Because plaintiff satisfies these three elements, he states a First Amendment retaliation

11  claim against Hahn for which relief could be granted.  *Blair*, 608 F.3d at 543.  However,

12  defendants argue that regardless of whether any of plaintiff's constitutional violation claims are

13  properly pled, the statute of limitations bars the claim.  Dckt. No. 45 at 18-21.

14              *iii.   Statute of Limitations*

15     "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations

16  for personal injury actions, along with the forum state's law regarding tolling, including

17  equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones*

18  *v. Blanas*, 939 F.3d 918, 927 (9th Cir. 2004).  The statute of limitations for a § 1983 personal

19  injury action filed in California is two years.  *Id*.; Cal. Civ. Proc. Code § 335.1 (West 2012).

20  Plaintiff filed this action in December 2010 and filed his second amended complaint on March 2,

21  2012. Plaintiff does not plead a specific date regarding Hahn's email; however, it apparently

22  closely followed plaintiff's March 23 or 24, 2004 email.  SAC ¶ 35.  Therefore, the statute of

23  limitations period for filing the retaliation claim on the basis of Hahn's email expired two years

24  later, sometime during the spring of 2006.

25     Although plaintiff does not specifically argue that the statute of limitations should be

26  equitably tolled, plaintiff does argue that defendants should be estopped from asserting any

statute of limitations defense since "their own actions, fraud and deceit caused the delay."[9]

Equitable estoppel is a defensive doctrine that prevents a defendant from raising a statute of

limitations defense "when its own prior representations or conduct have caused the plaintiff to

run afoul of the statute and it is equitable to hold the defendant responsible for that result." *Allen*

*v. A.H. Robins Co., Inc.*, 752 F.2d 1365, 1371-72 (9th Cir. 1985).  Here, plaintiff has not alleged

any facts demonstrating that defendants' representations or conduct caused plaintiff to run afoul

of the statute of limitations on a First Amendment retaliation claim based on Hahn's 2004 email,

especially since that email was sent to plaintiff directly.  SAC ¶ 35.

Therefore, plaintiff's First Amendment retaliation claim should be dismissed.  Plaintiff

should be granted leave to amend his First Amendment retaliation claim based on the letters,

display, and/or 2004 email only to the extent that plaintiff can cure the deficiencies outlined

above.

3. <u>Equitable Estoppel and Laches</u> (Third Cause of Action)

Plaintiff's third cause of action claims that the County "should be estopped [from]

asserting *any* statute of limitations defense when their own actions, fraud and deceit caused the

delay, [and] laches should bar any civil or administrative prosecution for the County's prior

abandoned prosecution. . . ."  SAC ¶ 81.  Plaintiff misunderstands the doctrines of estoppel and

laches.  "[E]stoppel and laches . . . are defensive matters under the Federal Rules of Civil

Procedure, Rule 8(c)," and therefore do not create a cognizable cause of action.  *Balistreri*, 901

F.2d at 699; *Sidebotham v. Robison*, 216 F.2d 816, 827 (9th Cir. 1955).

Equitable estoppel to prevent a defendant from raising a statute of limitations defense is a

doctrine that applies "when its own prior representations or conduct have caused the plaintiff to

---

[9] As discussed below, plaintiff also attempts to predicate a cause of action on the doctrine of laches.  Plaintiff's invocation of the affirmative defense of laches is inappropriate and does not toll the limitations period for this claim.  *See* SAC, Claim 3. "Laches is an equitable time limitation on a party's right to bring suit," and is raised by a defendant as an affirmative defense when the defendant can prove "both an unreasonable delay by the plaintiff and prejudice to itself."  *Kling v. Hallmark Cards, Inc.,* 225 F.3d 1030, 1036 (9th Cir. 2000).

1    run afoul of the statute and it is equitable to hold the defendant responsible for that result."

2    *Allen*, 752 F.2d at 1371-72; *see also Sidebotham*, 216 F.2d 816 at 829.  Similarly, plaintiff

3    misunderstands laches.  The doctrine of laches is not a cause of action, but an affirmative

4    defense allowing *a defendant* to assert "an equitable time limitation on a party's right to bring

5    suit."  *Kling,* 225 F.3d at 1036.  Consequently, plaintiff cannot establish a claim upon which

6    relief can be granted based upon his purported claims of equitable estoppel and laches and they

7    must be dismissed without leave to amend.

8         4.  Procedural Due Process (Fourth and Tenth Causes of Action)

9         Plaintiff claims that the County and County defendants violated his due process rights

10   under the Fifth and Fourteenth Amendments.  SAC, Claims 4, 10.[10]  Specifically, plaintiff claims

11   that defendants failed to provide sufficient notice (fourth cause of action) and an opportunity to

12   be heard (tenth cause of action).  *Id.*  "Due process requires . . . notice and an 'opportunity to be

13   heard at a meaningful time and in a meaningful manner.'"  *Schneider v. County of San Diego*, 28

14   F.3d 89, 92 (9th Cir. 1994) (quoting *Brock v. Roadway Express, Inc.,* 481 U.S. 252, 261 (1987)).

15        As to notice, plaintiff's own allegations show that notification letters were sent to him.

16   He claims that the County letters notifying him of the violations on his property were rendered

17   insufficient by the unconstitutional vagueness of the junk ordinances as to what constitutes

18   "junk."  SAC, Claim 4.  "For the notice to satisfy due process, it must 'be of such nature as

19   reasonably to convey the required information.'"  *Schneider*, 28 F.3d at 92 (quoting *Mullane v.*

20   *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).  "It is established that a law fails

21   to meet the requirements of the Due Process Clause if it is so vague and standardless that it

22

23        [10] Plaintiff also claims that insufficient notice violated his Sixth Amendment rights.
     However, the Sixth Amendment is inapplicable to plaintiff's case.  Although plaintiff states that
     he "he has been *charged* with" a crime, plaintiff does not allege any facts showing that he has
24   been formally charged criminally with violating the junk ordinances.  SAC ¶¶ 11, 132; *see*
     *Gannett Co. v. DePasquale*, 44 U.S. 379-80 (1979) (noting that the Sixth Amendment provides
25   certain guarantees "to a person charged with the commission of a criminal offense, and to him
     alone").  Therefore, plaintiff's reliance on *Hoffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) is
26   misplaced.  Dckt. No. 45 at 11 n.3; SAC ¶ 85 n.21.

leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio v. State of Pa.,* 382 U.S. 399, 402-03 (1966).  Plaintiff's notice claim therefore depends on whether the junk ordinances are unconstitutionally vague and thus provide insufficient notice.  Plaintiff's fifth cause of action claims that the ordinances are so vague and standardless as to what items fall under the ordinances as "junk," that it is uncertain what items cannot be stored outside if the total exceeds 200 square feet.  SAC ¶¶ 88-90, 101.  However, as discussed below under plaintiff's fifth cause of action, the ordinances are not facially vague and do not require one to guess as to what is prohibited.  Plaintiff fails to demonstrate that the ordinances render the County notices of the violations of such a nature as to not reasonably convey what conduct was prohibited.  Plaintiff's fourth cause of action should therefore be dismissed without leave to amend.

As to the opportunity to be heard (prior to the County taking action to deprive him of either a liberty or property interest), although plaintiff claims the County defendants denied him this right by indefinitely postponing the abatement hearing in 2006, plaintiff has alleged no action was taken by the County.  Thus, he was not deprived of any such opportunity as a result of not having the 2006 hearing.  *Id.*, Claim 10.  Nor does there appear to have been any reason for a hearing.  The dispute had been settled.  Moreover, plaintiff has not alleged that he has suffered any injury as a result of the abandoned hearing in 2006 other than that the hearing was abandoned.  *Id.* ¶¶ 128-32.  The County was not required to hold a hearing for the sake of holding a hearing.  Even assuming all of plaintiff's allegations in the second amended complaint are true, no action has been taken by or on behalf of the defendants for this court to review.[11]

_____

[11] Furthermore, because plaintiff has not demonstrated that the 2006 abatement notice failed to provide him with the requisite notice that his property failed to comply with the ordinances at issue and to offer him a reasonable time to cure the problem, no actual abatement without opportunity for hearing has allegedly occurred and plaintiff's due process claim fails. *See Schneider*, 28 F.3d at 92-93 (no due process violation where the county gave owner of

1   While it is possible some event could occur in the future between plaintiff and the County that

2   could warrant review in federal court, no such event has occurred at this time.[12]

3          The court has no jurisdiction to adjudicate claims unless they are ripe.  *Streich*, 560 F.3d

4   at 931.  The Supreme Court has explained that the "basic rationale [of the ripeness doctrine] is to

5   prevent the courts, through avoidance of premature adjudication, from entangling themselves in

6   abstract disagreements over administrative policies, and also to protect the agencies from judicial

7   interference until an administrative decision has been formalized and its effects felt in a concrete

8   way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)

9   *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).  A claim is not ripe

10  "if it involves 'contingent future events that may not occur as anticipated, or indeed may not

11  occur at all.'"  *Streich*, 560 F.3d at 931 (quoting *Thomas v. Union Carbide Agr. Prods. Co.*, 473

12  U.S. 568, 580-81 (1985)).

13         A party must also have "standing" to bring an action; this requirement is part of the case-

14  or-controversy provisions of Article III of the Constitution.  *Lujan*, 504 U.S. at 560.  There are

15  three elements: "First, the plaintiff must have suffered an injury in fact-an invasion of a legally

16  protected interest which is (a) concrete and particularize and (b) actual or imminent, not

17  conjectural or hypothetical. Second, there must be a causal connection between the injury and

18  the conduct complained of-the injury has to be fairly . . . trace[able] to the challenged action of

19  the defendant, and not . . . th[e] result [of] independent action of some third party not before the

20

21  property notice that vehicles were a nuisance and commenced abatement proceedings with right
    of judicial appeal); *Samuels v. Meriwether*, 94 F.3d 1163, 1166-67 (8th Cir. 1996) (written
22  notice of proposed action and opportunity for hearing prior to nuisance abatement suffices).

23         [12] On November 21, 2010, plaintiff requested access to County records regarding code
    enforcement, third party complaints against him, and other materials.  *Id.* ¶¶ 124, 126.  The
24  County denied the request.  *Id.*  Plaintiff argues this denial caused him harm because it enabled
    the County to continue harassing him as he "could not even file for a restraining order against
25  the unknown parties [anonymous neighbors who lodged complaints with the County]."  *Id.* ¶ 117
    n.28.  But he has not shown how.  Nor has he explained or shown how such a denial violated his
26  constitutional rights.

court.  Third it must be likely as opposed to merely speculative that the injury will be redressed

by a favorable decision." *Id*. at 560-61 (internal citations and quotation marks omitted).  The

two doctrines are related: "ripeness can be characterized as standing on a timeline" and often

"coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights*

*Commission*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).

Although plaintiff attempts to argue that defendants' abandonment of the abatement

hearing in 2006 violated federal law and therefore warrants review in this court, he is mistaken.

SAC, Claim 10.  Despite asserting over a dozen causes of action, the fact remains that although

plaintiff asserts that he had the right "to confront his accusers, and to be proven innocent or

guilty of the crime he has been *charged* with," there has been no formal decision by the

defendants or any concrete effects on plaintiff, let alone an injury in fact.  *Id*. ¶ 132.  As noted

above, courts should avoid "entangling themselves in abstract disagreements" such as is present

here.[13]  *Abbott Labs.*, 387 U.S. at 148-49.  Plaintiff's tenth cause of action should therefore be

dismissed without leave to amend.

### 5.  Declaratory Relief  (Fifth Cause of Action)

Plaintiff claims County ordinances "19.08.355 and 19.08.360 are unlawfully vague and

overbr[oad] and violate the due process clause" because "*any* item stored 'outside'" can fall

under their definition of "junk."  SAC ¶ 88.  Defendants move to dismiss this cause of action on

the grounds that plaintiff fails to state a claim that the ordinances are so overbroad or vague so as

to violate the Due Process Clause.  Dckt. No. 45 at 10-12.  The argument is well-taken.

"The fact that . . . [the statute] might operate unconstitutionally under some conceivable

set of circumstances is insufficient to render it wholly invalid, since we have not recognized an

---

[13] Nor is this a situation where plaintiff's claim is capable of repetition, yet evades
review.  *See Spencer v. Kemna*, 523 U.S. 1, 17 (1998) ("[T]he capable-of-repetition doctrine
applies only in exceptional situations, . . . where the following two circumstances [are]
simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated
prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same
complaining party [will] be subject to the same action again.")

'overbreadth' doctrine outside the limited context of the First Amendment." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 949 n.11 (9th Cir. 1997) (the "Supreme Court has not applied overbreadth outside the limited context of the First Amendment").[14]

A First Amendment overbreadth claim "must fail unless, at a minimum, the challenged ordinance 'is directed narrowly and specifically at expression or conduct commonly associated with expression.'" *Nunez*, 114 F.3d at 950 (quoting *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996) (quoting *City of Lakewood v. Plain Dealer Publishing*, 486 U.S. 750, 760 (1988))) (internal quotation marks omitted); *see Roulette*, 97 F.3d 300 (holding an overbreadth challenge to an ordinance targeting general conduct, not expression, is inappropriate). Plaintiff does not claim the junk ordinances are directed narrowly and specifically at regulating expression or commonly associated conduct. SAC ¶ 71. In fact, according to plaintiff, the ordinances are violated when certain items stored outside exceed 200 square feet when amassed. *Id.* His own assertions comport with defendants' claim that the ordinances are directed at regulating the general quantity of outside storage, not expression. Dckt. No. 45 at 17. Plaintiff's own factual allegations demonstrate that his overbreadth challenge to the junk ordinances targeting the storage conduct of property owners is thus inappropriate and should be dismissed without leave to amend.

Plaintiff also purports to challenge the ordinances as unconstitutionally vague. "A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process." *Hoffman*, 455 U.S. at 497. Vagueness is evaluated under two standards: (1) "fair notice" and (2) "fair enforcement." *Id.* at 494-95, 498. Plaintiff alleges that the junk ordinances are

---

[14] Plaintiff's reliance on *People v. Toledo* is misplaced for *Toledo* reiterates that a statute is unconstitutionally overbroad "only if the provision inhibits a substantial amount of protected speech." SAC ¶ 93; 26 Cal. 4th 221, 234-35 (2001).

impermissibly vague facially because they fail to provide fair notice and enforcement.[15]  *See*

SAC ¶¶ 88-101; Dckt. No. 47 at 6.

To establish a facial vagueness challenge, "the complainant must demonstrate that the

law is impermissibly vague in *all* of its applications."[16]  *Hoffman*, 455 U.S. at 497 (emphasis

added).  Plaintiff fails to demonstrate that in *all* applications, the junk ordinances are

impermissibly vague.  *Id.*

Plaintiff argues that the ordinances' definition of "junk" is vague because it can include

"*any* item," with the result that "no reasonable person in a similar position to plaintiff would

clearly be able to identify what behavior or items qualify as illegal under these codes, let alone

what items would subject him or her to enforcement under 19.08.355 and 19.08.360."  SAC

¶¶ 90, 96, 101.  Nevertheless, plaintiff simultaneously claims that the County's "anti-recycling

codes [19.08.355 and 19.08.360] make <u>any and all recycling, recycled or converted items illegal</u>,

if such items are stored outside, and take up more than their arbitrary dictate of 200 square feet."

SAC ¶¶ 93 n.26, 96.  Plaintiff argues that the ordinances are thus "absolutely *contrary to good*

*public policy*" because the "very nature" of recycleable or converted items places them within

the ordinances' definition of "junk."  *Id.* ¶¶ 90, 96-97, 100.

---

[15] Plaintiff also claims that the ordinances are vague as applied to him because "[a]ny item 'stored outside' can *and in Plaintiff's case is*, arbitrarily made illegal," so that neither he nor a "reasonable person in a similar position to plaintiff" can ascertain what items are restricted and subject to enforcement. SAC ¶¶ 90, 96, 101 (original emphasis removed) (emphasis added); *see* Dckt. No. 74 at 6.  He bases his as-applied challenge solely upon the grounds that the ordinances' definition of junk is vague on its face leaving him and others no resort but to guess at what is prohibited.  *See* SAC ¶ 89.  Thus, the challenge in reality mirrors plaintiff's facial challenge and is subject to the same analysis.

[16] Defendants argue that "in the specific context of property use, a plaintiff making a facial challenge . . . must show the adoption of the ordinance itself constitutes a taking by denying any economically viable use of the land."  Dckt. No. 45 at 11.  Defendants conclude that because plaintiff does not plead this, his challenge fails.  *Id.* at 12.  The argument is beside the point.  Plaintiff does not claim a regulatory taking of his property.  The test defendants argue is not applicable to plaintiff's challenge but applies instead to a claim of "an unconstitutional taking of private property," *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494-95 (1987), which is not asserted here.  Dckt. No. 47 at 7; *see* SAC ¶ 88.

1    Plaintiff thus not only claims that the ordinances "make any and all recycling, recycled or

2  converted items" junk, he supports this claim by matching the items' inherent nature with the

3  language of the ordinances. *Id.* ¶ 96 ("Under COUNTY ordinances *one* pallet (standard 48 by

4  40) measures 13 square feel (Plaintiff uses many of them). *One* piece of congruent aluminum

5  sheet is 40 + square feet (Plaintiff owns over 30 of them). *One* average sized windows measure

6  15 square feet (plaintiff owns roughly 10 of them)."). In doing so, plaintiff demonstrates that the

7  ordinances are *not* "impermissibly vague" when applied to recycled or converted items in either

8  his case or in general. *See id.* ¶¶ 96, 104 (Defendants' "interpretation and enforcement of

9  19.08.355 and 19.08.360 have forced Plaintiff and other citizens under color of law to be treated

10  as criminals for their recycling. . ."); *Hoffman*, 455 U.S. at 497. Because plaintiff demonstrates

11  the inverse of what he is required to, his vagueness claim fails and should be dismissed without

12  leave to amend.

13    Defendants also argue that the junk ordinances are not unduly restrictive of plaintiff's

14  rights in violation of the Due Process Clause. *Id.* at 10-11. "The standard for evaluating

15  ordinances claimed to be violative of due process . . . is whether a rational basis exists for the

16  police power exercised" on behalf of a legitimate government interest. *Autotronic Sys., Inc. v.*

17  *City of Coeur d'Alene*, 527 F.2d 106, 108 (9th Cir. 1975); *Christy v. Hodel*, 857 F.2d 1324, 1329

18  (9th Cir. 1988). Plaintiff alleges that under the ordinances, "the allowable number of outdoor

19  storage is completely *arbitrary* and bears no relationship at all to the health and safety or other

20  compelling government interest. . . ." *Id.* ¶ 95. He says this is true especially in light of the

21  ordinances' broad application across multiple property zones ranging from agricultural to single

22  family zones, and that the County does not have a "legitimate government purpose" in limiting

23  the type of items that are restricted, which serve a purpose on his rural ranch property. *Id.*

24  ¶¶ 98, 99. Yet plaintiff's declaratory relief claim focuses primarily on his vagueness and

25  overbroad arguments, rather than explaining how the ordinances violated his substantive due

26  process rights by not rationally relating to a legitimate County interest. To the extent plaintiff

purports to state such a claim, he must do so clearly in a manner that enables defendants to

adequately respond to it.  Accordingly, any purported claim that the ordinances violate plaintiff's

substantive due process rights because they are not rationally related to a legitimate County

interest should be dismissed with leave to amend.[17]

6.  <u>Unlawful Regulation of Commerce</u> (Sixth Cause of Action)

Plaintiff further claims the County junk ordinances regulating outside storage

unconstitutionally regulate interstate commerce.  SAC, Claim 6.  Plaintiff alleges the ordinances

unconstitutionally interfere with his ability to freely engage in interstate commercial transactions

concerning his purchase of airplane parts and other items because he is unable to store such

items outside on his property if the amassed total exceeds 200 square feet.  *Id.* ¶¶ 103-108.

Defendants move to dismiss this claim based on plaintiff's lack of standing.[18]  Dckt. No. 45 at

15.

State authority to regulate interstate commerce is limited by the dormant Commerce

Clause.  "In addition to granting Congress the power 'to regulate Commerce . . . among the

several States,' U.S. Const. art. I, § 8, cl. 3, the Commerce Clause has a negative aspect

(commonly called "the dormant Commerce Clause") that limits the states' power to regulate

interstate commerce.  The dormant Commerce Clause prohibits the states from imposing

restrictions that benefit in-state economic interests at out-of-state interests' expense, thus

---

[17] Although defendants contend that this claim fails because the junk ordinances "rationally further the [County's legitimate] goal of minimizing the health, environmental and aesthetic risks created by 'junk' by limiting their quantity outside," Dckt. No. 45 at 10-11, there is no evidence before the court at the motion to dismiss stage to make such a determination and they identify nothing in the complaint or its attachments to establish that fact.  Thus, the court cannot say at this time that the ordinances are or are not a rational exercise of the County's police power in furtherance of a legitimate government interest.  Also, although defendants argue that the statute of limitations bars this claim (and plaintiff counters that equitable tolling and laches apply), Dckt. No. 45 at 18-21, SAC, Claim 3, because the claim will be dismissed due to plaintiff's failure to clearly alleged such a claim, those issues need not be addressed at this time.

[18] Defendants also argue that this claim should be dismissed on the merits.  Dckt. No. 45 at 14-15.  Because plaintiff lacks standing, the merits need not be addressed.

1   reinforcing 'the principle of the unitary national market.'"  *Cloverland-Green Spring Dairies,*

2   *Inc. v. Pennsylvania Milk Marketing Bd.*, 298 F.3d 201, 210 (2002) (quoting *West Lynn*

3   *Creamery, Inc. v. Healy*, 512 U.S. 186, 192–93 (1994)).  As it relates to the County, "[a] state's

4   subdivisions are likewise precluded."  *City of Los Angeles v. County of Kern*, 581 F.3d 841, 847

5   n.5 (9th Cir. 2009).

6          A plaintiff must have standing to pursue a dormant commerce clause claim.  *Id.* at 844-

7   45.  This requirement includes prudential standing.  *Id*; *On The Green Apartments L.L.C. v. City*

8   *of Tacoma*, 241 F.3d 1235, 1239 (9th Cir. 2001).  Prudential standing is analyzed under "the

9   zone of interests test [, which] governs claims under the Constitution in general, and under the

10  negative [dormant] Commerce Clause in particular."  *City of Los Angeles*, 581 F.3d at 846

11  (quoting *Individuals for Responsible Gov't, Inc. v. Washoe County,* 110 F.3d 699, 703 (9th Cir.

12  1997) (second alteration in original) (internal quotation marks and citation omitted)).

13  The zone of interests test "is not meant to be especially demanding."  *Id.* (quoting *Clarke v. Sec.*

14  *Indus. Ass'n,* 479 U.S. 388, 399 (1987) (internal quotation marks omitted)).  However, the

15  "complaint must 'fall within the zone of interests to be protected . . . by the statute or

16  constitutional guarantee in question'" for the plaintiff to have prudential standing to bring the

17  claim.  *Washoe County,* 110 F.3d at 703 (quoting *Valley Forge Christian Coll. v. Ams. United*

18  *for Separation of Church & State, Inc.,* 454 U.S. 464, 475 (1982)).  A complaint falls within the

19  zone of interests to be protected when the plaintiff's "interests *bear more than a marginal*

20  *relationship* to the purposes underlying the dormant Commerce Clause."  *Id*. at 703 (emphasis

21  added).  The purpose of the clause is "to limit the power of States to erect barriers against

22  interstate trade" in order to "advanc[e] their own commercial interests."  *City of Los Angeles*,

23  581 F.3d at 847 (quoting *H.P. Hood & Sons, Inc. v. Du Mond,* 336 U.S. 525, 535 (1949)

24  (internal quotation marks omitted)).

25          While the test is not particularly demanding, plaintiff identifies nothing regarding his

26  protest through the defiant display of used parts, materials, etc., that has even a marginal

1   relationship to the purpose of the Commerce Clause.  Having failed to identify facts showing

2   his interests "*bear more than* a marginal relationship to the purposes underlying the dormant

3   Commerce Clause" he fails to meet the zone of interests test.  *Individuals for Responsible Gov't,*

4   *Inc.*, 110 F.3d at 703 (emphasis added).  In *Washoe County*, an ordinance required residents to

5   subscribe to a specified county garbage disposal service.  *Id.* at 702.  The plaintiffs argued this

6   ordinance violated the dormant Commerce Clause because it prevented their usage of out-of-

7   state garbage disposal sites and thus unconstitutionally regulated interstate commerce.  *Id.*  The

8   Ninth Circuit held that the zone of interests test was not met because the plaintiffs' interest did

9   not bear more than a marginal relationship to the purpose of the dormant Commerce Clause.  *Id.*

10  at 703.  Their interest in not being forced by the ordinance to pay for garbage services they

11  considered unnecessary and unwanted was "*not even marginally related* to the purposes

12  underlying the dormant Commerce Clause."  *Id.* (emphasis added).  Furthermore, "even on the

13  implausible assumption that all 3600 new customers previously dumped their garbage" at out-of-

14  state disposal sites, the Ninth Circuit found that the plaintiffs' interest would still not meet this

15  requirement.  Prudential standing was therefore lacking.  *Id.*

16       Plaintiff's interest here is even more attenuated.  Although he argues that the County junk

17  ordinances prevent him from freely purchasing items from out-of-state sellers, his interest

18  identified in the second amended complaint is in not being prohibited by the ordinances from

19  storing certain items outdoors on his property if the amassed total exceeds 200 square feet.  SAC

20  ¶¶ 103-108.  The *Washoe County* ordinance required the plaintiffs to use an in-county garbage

21  disposal site, undeniably preventing them from engaging in interstate commerce by utilizing out-

22  of-state commercial disposal sites.  110 F.3d at 702.  Here, the junk ordinances do not prevent

23  the purchase of any item, let alone any item specifically purchased through interstate commerce.

24  The argument to the contrary is frivolous.  The *Washoe County* ordinance required the plaintiffs

25  to subscribe to the county service.  *Id.* at 703.  Here, the ordinances do not require plaintiff to

26  restrict his purchases.  Plaintiff's purchase decisions may be impacted indirectly in some

attenuated way, but the ordinances are only implicated if he exceeds an amassed storage total of over 200 square feet of "junk" outside.  Plaintiff is free to utilize alternate storage methods such as acquiring additional enclosed storage for his property, utilizing off-site storage, or storing his airplanes at the County airport.[19]  SAC ¶ 105; Dckt. No. 47 at 9.  Like the plaintiffs in *Washoe County*, plaintiffs' interest here is "not even" marginally related to the dormant Commerce Clause's purpose (or even after the Ninth Circuit made an "implausible assumption" was "at best" only marginally related). 110 F.3d at 703-704.  Accordingly, his claim does not fall under the zone of interests protected by the dormant Commerce clause and he lacks prudential standing and his sixth cause of action must be dismissed.  Moreover, the facts already pleaded in the complaint demonstrate that leave to amend would be futile.  Plaintiff's interest is fixed under the challenged junk ordinances and prudential standing to bring this claim is not to open to curative amendment.

    7.  <u>Conspiracy</u> (Ninth Cause of Action)

    Plaintiff only generally alleges conspiracy.  To the extent that he attempts to allege a specific type of federal conspiracy, he fails to include specific factual allegations that, if true, would establish such a conspiracy.  For instance, to establish a private conspiracy claim under 42 U.S.C. § 1985(3), "a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or

---

[19] To the extent plaintiff alleges the potential financial injury he may incur if he elects to build additional storage facilities on his property, this potential injury does not satisfy the zone of interests test.  Dckt. No. 47 at 9.  Besides the fact that plaintiff is not required to incur these hypothetical expenses under the ordinances, "the zone of interests test turns on the *interest* sought to be protected, not the *harm* suffered by the plaintiff."  *City of Los Angeles*, 581 F.3d at 848.  Plaintiff's previously addressed interest in storing a large number of certain items outside on his property is the focus of the prudential standing inquiry here, not the financial harm he may decide to incur.

    Plaintiff elsewhere asserts that he incurred relocation costs from moving several airplanes, and suffered economic losses in the sale of certain items against his wishes following his meeting with County officials and in accordance with the notice of abatement requirement that he remove several large items of "junk" from his property. SAC ¶¶ 44-51.  For the same reason regarding his potential financial injury, this past financial harm does not satisfy the zone of interest test.

1   indirectly, any person or class of persons of the equal protection of the laws, or of equal

2   privileges and immunities under the laws.'  It must then assert that one or more of the

3   conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the)

4   conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of

5   having and exercising any right or privilege of a citizen of the Untied States.'"  *Griffin v.*

6   *Breckenridge*, 403 U.S. 88, 102-03 (1971).  Additionally, "there must be some racial, or perhaps

7   otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Id.* at

8   102; *see Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993).  The second

9   amended complaint here does not make these allegations.

10          Under plaintiff's thirteenth cause of action (42 U.S.C. § 1983 action against private

11  actors), plaintiff argues Does 25 through 40 engaged in a conspiracy with County actors.  While

12  "it is permissible to state a civil cause of action for conspiracy, based on § 1983," plaintiff's

13  § 1983 conspiracy allegation fails for the reasons given below specifically addressing that cause

14  of action.  *Cohen v. Norris,* 300 F.2d 24, 27 (9th Cir. 1962).

15          Plaintiff also cites in his thirteenth cause of action the case of *United States v. Price*, 383

16  U.S. 787, which concerned a criminal conspiracy to deprive a person's civil rights in violation of

17  18 U.S.C. § 241.  Second Am. Compl., ¶ 143.  However, 18 U.S.C. § 241 is a federal criminal

18  statute and does not provide for a private right of action.  *Allen v. Gold Country Casino,* 464

19  F.3d 1044, 1048 (9th Cir. 2006) (affirming dismissal of private claim under § 241 which does

20  "not give rise to civil liability"); *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980)

21  (affirming dismissal of private action under § 241 which "provide[s] no basis for civil liability").

22  Plaintiff therefore cannot state a 18 U.S.C. § 241 conspiracy claim.

23          Accordingly, plaintiff's federal conspiracy claim must be dismissed.  Moreover, it is

24  clear from the second amended complaint that further leave to amend cannot cure the defects of

25  this claim.

26  ////

8. <u>42 U.S.C. § 1983 Action Against Private Actors</u> (13th Cause of Action)

Plaintiff alleges a cause of action against private persons under 42 U.S.C. § 1983 against Does 25 through 40 (anonymous neighbors and complaining witnesses).  SAC, Claim 13.  "In order to assert a valid claim, a plaintiff must allege the deprivation of a federal right," by a "person who . . . acted under color of state law.  The complained of action must be 'fairly attributable to the state,' and not to a private actor."  *Jackson v. East Bay Hosp.*, 980 F. Supp. 1341, 1356 (N.D. Cal. 1997) (quoting *Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).  An action is "fairly attributable to the state" when two elements are met.  *Lugar,* 457 U.S. at 937. "First, the deprivation [of a federal right] must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible."  *Id.*  "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor" (or else "private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them").  *Id.*

Plaintiff fails to meet the first element.  He does not successfully "allege the deprivation of a federal right" by Does 25 through 40.  *Id.*  Although plaintiff alleges two claims based upon violations of his federal rights against Does 25 though 40 (violation of First Amendment rights and federal conspiracy), as discussed above, those claims against these defendants must be dismissed for failure to state a claim.  Moreover, plaintiff has not sufficiently alleged that Does 25 through 40, referred to as plaintiff's anonymous neighbors and complaining witnesses, can fairly be said to be state actors.  Accordingly, plaintiff's thirteenth cause of action must be dismissed with leave to amend.[20]

////

////

---

[20] Because plaintiff's entire second amended complaint is dismissed under Rule 12(b)(6), the court need not address defendants' Rule 12(b)(1) or 12(f) motions.

III.   REQUEST TO FILE ELECTRONICALLY

Plaintiff has filed an application for an order granting him permission to file documents in this case electronically.  Dckt. No. 51.  The Local Rules provide that "[a]ny person appearing pro se may not utilize electronic filing except with the permission of the assigned Judge or Magistrate Judge."  E.D. Cal. L.R. 133(b)(2).  "Requests to use paper or electronic filing as exceptions from these Rules shall be submitted as stipulations as provided in L.R. 143 or, if a stipulation cannot be had, as written motions setting out an explanation of reasons for the exception.  Points and authorities are not required, and no argument or hearing will normally be held."  E.D. Cal. L.R. 133(b)(3).

Attached to plaintiff's application is a stipulation signed by both plaintiff and defense counsel, authorizing plaintiff to file electronically.  Dckt. No. 51, Ex. 1.  Plaintiff's application also states that (1) he has been prejudiced by the "delay" in his paper filed documents getting scanned into the system, and by not being able to access the electronic case filing system, and (2) he has to expend significant time and money to drive to Sacramento from his residence in Sutter Creek, California in order to file documents in person.  *Id*. at 2.

In light of the parties' stipulation and plaintiff's representations, plaintiff's request for leave to file electronically will be granted.[21]  The Clerk of Court will contact plaintiff in order to facilitate his participation in the court's electronic filing and case management system ("CM/ECF") system.[22]

////

////

////

---

[21] Because plaintiff has not consented to electronic service, the parties shall continue to serve documents conventionally in accordance with Local Rules 135(b) and (e).  *See* Dckt. No. 51 at 4.

[22] However, plaintiff is admonished that an abuse of the CM/ECF system will result in a revocation of the authorization for plaintiff to file electronically.

IV.     <u>CONCLUSION</u>

In light of the foregoing, IT IS HEREBY ORDERED that:

1.  Plaintiff's request to file electronically, Dckt. No. 51, is granted; and

2.  The Clerk of Court shall contact plaintiff in order to facilitate his participation in the CM/ECF system.

IT IS FURTHER RECOMMENDED that:

1.  Defendants' motion to dismiss, Dckt. No. 44, be granted;

2.  Plaintiff's second amended complaint be dismissed in its entirety, with leave to amend only as set forth herein; and

3.  Plaintiff be granted forty-five days from the date of service of any order adopting these findings and recommendations to file a third amended complaint as provided herein, so long as he can cure the abovementioned defects by truthfully alleging facts that are not inconsistent with those contained in his previous complaints.  In any third amended complaint, plaintiff must plead against which defendant(s) he brings each cause of action, what each defendant did to support relief under each respective cause of action, and what actual injuries plaintiff has suffered as a result of each defendant's conduct.  The third amended complaint must bear the docket number assigned to this case and must be labeled "Third Amended Complaint." Failure to timely file a third amended complaint in accordance with this order will result in a recommendation this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

////

////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 8, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

37